UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:24-cr-335-MTS |
| | ) |
| JANIYA J. MOORE, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

**1. PARTIES**

The parties are the defendant Janiya J. Moore, represented by defense counsel Steven E. Sokolik, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count Seven of the Indictment, the Government agrees that no further federal prosecution will be brought in this District relative to the defendant's maintenance of a drug premises at 2335 South 7th Street, Apartment A, St. Louis, Missouri, of which the Government is aware at this time.

~~maintenance of a drug premises at 2335 South 7th Street, Apartment A, St. Louis, Missouri, of which the Government is aware at this time.~~ *MTS*

**B.** **The Sentence:** The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3.** **ELEMENTS**

As to Count Seven, the defendant admits to knowingly violating Title 21, United States Code, Section 856(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(i) The Defendant, knowingly maintained a residence, located at 2335 South 7th Street, Apartment A, St. Louis, Missouri, within the Eastern District of Missouri; and

(ii) The Defendant did so for the purpose of manufacturing, distributing and using a controlled substance, namely fentanyl, a Schedule II controlled substance.

**4.** **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On August 5, 2023, members of the St. Louis Metropolitan Police Department (SLMPD) were dispatched to 4627 Newport Avenue, St. Louis, after numerous calls about a fight and someone trying to break into a house. As officers drove down Newport Avenue, they witnessed a black sedan with LED style taillights flee the scene. When they arrived at 4627 Newport, they observed the front window of the residence was shattered, and glass was strewn all around the sidewalk, along with several blonde hair braids. Officers also located a large trail of blood leading from the shattered glass to the front porch, and through the front door (which was open) into the residence. Fearing someone may have been severely injured, officers announced themselves and entered the residence.

Once inside, officers followed the trail of blood where they found a folding knife, covered in blood, in the front foyer, a bloody t-shirt, and blood all over the walls. As they continued to search the house, they located a black assault rifle with a large capacity magazine laying in the middle of the living room floor. At this point, officers heard a television and running water in the rear of the residence. The officers announced themselves again and continued further into the house to search for anyone who may have been injured.

In the kitchen, they located a large metal platter with white powder and a multicolored capsule on the counter. The officers proceeded into the bedroom where they observed two additional assault rifles, both with large capacity magazines, on the floor leaning against the closet. At this point, due to safety concerns, the two officers exited the residence and waited for additional units to respond.

Shortly after more officers arrived, they reentered the residence to continue their search for injured persons. Once again, officers followed the blood trail through the house and into a

bathroom. The sink was actively running, the toilet was overflowing, and officers observed blood around the sink. The bedroom was searched a second time and officers located an additional assault rifle, with a large capacity magazine, along with a Missouri Driver License issued to Trequan Dotson. Officers then returned to the living room and searched behind a couch where they located three additional assault rifles. While officers were in the residence, an individual later identified as Johnetta Dotson responded to the address, informed officers her son, Trequan Dotson, lives at the residence but fled before a further interview could be conducted.

While officers searching for injured persons at 4627 Newport, officers received another call for "shots fired" at 2335 South 7th Street. One of the 911 calls was placed by Defendant, who reported the shooting was related to the incident at Newport. She specifically reported that Dotson was at her residence and was in possession of firearms and drugs. Officers secured the Newport residence and responded to South 7th Street.

As they approached the residence, officers located a black Mercedes sedan with LED taillights parked in the rear of the property. Officers noticed what appeared to be blood smeared all over the vehicle, and a trail of spent shell casings that led from the rear of the vehicle to the rear door of the residence—which also had blood smeared on it.

Ultimately, officers approached the residence and were given consent to enter. Officers identified Defendant, two other adult females, and two juveniles.[1] Based on the investigation, officers performed a protective sweep of the residence before speaking with the women, and later obtained consent to search the entire residence. During their search, officers located a numerous multicolored capsule throughout every room of the house, including the juvenile's bedroom. In

---

[1] The two juveniles were later identified as Dotson's daughters, one being the daughter of Dotson and Defendant.

the kitchen, officers located a large plate with white powder, a baggie with a large quantity of white chunky powder, a small blender with suspected drug residue, and a digital scale sitting on the counter. They also located a large quantity of capsules and baggies inside the cabinets and drawers. Officers then interviewed the adult females, including Defendant.

As they spoke to the women, officers observed a pair of female tennis shoes covered in blood sitting in front of the couch and an open box with a pill press sitting inside. They also located a large mesh bag with beauty supplies inside, concealing a semiautomatic pistol. The pistol was also covered in blood. A second pistol was also located in a closet.

An officer searched the immediate area near the plate and located a baggie with a large quantity of white chunky powder—suspected to be a controlled substance. Defendant was advised of her *Miranda* rights, which she acknowledged and knowingly and voluntarily waived, and provided a statement to officers. Defendant detailed how she went to Dotson's residence (4627 Newport) with her cousin, G.W., earlier in the evening and was involved in a physical altercation with Dotson, G.W., and another female. After the fight at Newport, G.W. drove her back to 7th street in the black sedan and Dotson followed. Dotson fled shortly before police arrived at the apartment.

The suspected controlled substance the officers located inside 2335 South 7th Street, were submitted for testing and a lab analysis determined the substance to be approximately 75.35 grams of fentanyl. The parties agree that while the Defendant rented 2335 South 7th Street and resided there with her and Dotson's juvenile daughter. While Defendant utilized the apartment for other purposes, she admits that she maintained the apartment for the purpose of facilitating Dotson's drug trafficking activities.

5. **U.S. SENTENCING GUIDELINES: 2023 MANUAL**

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

A. **Chapter 2 Offense Conduct:**

    i. **Base Offense Level:** The parties agree that the base offense level is 20, as found in Section 2D1.8, and 2D1.1(c)(8). The parties agree that the quantity of fentanyl for which the Defendant is accountable, including relevant conduct, is at least 100 kg grams, but less than 400 kg of converted drug weight.

    ii. **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: The parties agree that two (2) levels should be added pursuant to Section 2D1.1(b)(1) as the Defendant possessed a dangerous weapon; two (2) levels should be added pursuant to Section 2D1.1(b)(12) maintained a premises for the purpose of distributing a controlled substance.

B. **Chapter 3 and 4 Adjustments:**

    i. **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of

Page **6** of **13**

guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

    **ii.** **Other Adjustments:** The Defendant may be eligible for a two-level reduction pursuant to 4C1.1 if she is determined to be an eligible zero-point offender.

  **C.** **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 21, unless the Defendant receives a two-level reduction under 4C1.1.

  **D. Criminal History:** The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

**E.   Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7.   **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**A.   Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**i.   Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**ii.   Sentencing Issues:** In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the Defendant within or above the determined Sentencing Guidelines range.

**B.   Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **C.**    **Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.**    **OTHER:**

    **A.**    **Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

    **B.**    **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

    **C.**    **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code,

Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

    **D.**    **Mandatory Special Assessment:** This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    **E.**    **Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    **F.**    **Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration, and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

    **G.**    **Forfeiture:** The Defendant agrees to forfeit all of the Defendant's interest in all items seized by law-enforcement officials during the course of their investigation. The Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of the Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. The Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners. The Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.**    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the United States' case and any defenses.

10.    **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

**11.   CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if the Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12.    NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

7/21/25
Date

PHILLIP J. VOSS, #6317069(IL)
Assistant United States Attorney

7/23/25
Date

JANIYA J. MOORE
Defendant

7/23/25
Date

STEVEN E. SOKOLIK
Attorney for Defendant

13